JUDGE RAMOS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X  14 CV  7636

JOHN J. O'NEILL

              Case No.: _____

        Plaintiff,

-against-

LVNV FUNDING, LLC
RESURGENT CAPITAL SERVICES, LP
ALEGIS GROUP, LLC
LAW OFFICES OF STEVEN COHEN, LLC
STEVEN COHEN



        Defendants.
-----------------------------------------------------------------X

## ORIGINAL COMPLAINT

Plaintiff John O'Neil brings suit against Defendant debt collectors for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq* and for conversion, and against the process serving company for violations of N.Y. Gen. Bus. Law § 349 *et seq*, and in support would show as follows.

### A. JURISDICTION AND VENUE

1.    The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2.  Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Bronx County, New York.

### B. PARTIES

3.  Plaintiff JOHN J. O'NEIL ("O'Neill") is an individual currently residing in Rockland County, New York.

4.  Defendant RESURGENT CAPITAL SERVICES, LP ("Resurgent") is a limited partnership organized under the laws of the State of Delaware. Said Defendant engages in business in New York. This suit arose out of said Defendant's business in New York.

5.  Defendant LVNV FUNDING LLC ("LVNV") is a limited liability corporation, organized under the laws of the State of Delaware. Said Defendant engages in business in New York. This suit arose out of said Defendant's business in New York.

6.  Defendant ALEGIS GROUP, LLC ("Alegis") is a limited liability corporation, organized under the laws of the State of Delaware. Said Defendant engages in business in New York. This suit arose out of said Defendant's business in New York.

7.  Defendant Law Offices of Steven Cohen, LLC, (the "LLC") is a domestic limited liability corporation with its principal place of business at 4197 3rd Avenue, Bronx, New York 11791. Said Defendant engages in business in New York, and this suit arose out of said Defendant's business in New York.

8.  Defendant Steven Cohen ("Cohen") is an individual who, on information and belief, is a resident of the State of New York. Steven Cohen is an attorney at the LLC and is personally engaged in the debt collection violations of the LLC.

### C. STATEMENT OF FACTS

9. On or about, July 15, 2008, now-Plaintiff John O'Neil was sued by LVNV in *LVNV Funding v. John O'Neill*, 065032-08/BX ("the collections lawsuit") in Bronx County Civil Court.

10. LVNV sought to collect a putative debt for $1,663.12 (together with interest at the rate of 9% per annum from 10/31/04), alleged to originally be owed to Household Bank, (SB) NA.

11. LVNV is the putative owner of the debt. Resurgent Capital Services, LP is the master servicer for LVNV responsible for taking all the affirmative actions to collect putative debts owned by LVNV, including retaining debt collection sub-servicers or debt collection law firms to collect on the putative debts.

12. Alegis is the general partner of Resurgent and thus is liable for the debt collection violations and other actions of Resurgent.

13. LVNV's counsel in the collection lawsuit was Rubin & Rothman, LLC.

14. O'Neil was never served with the lawsuit.

15. Instead, LVNV, through its counsel filed a false affidavit of service with the Court.

16. Based on the false representations in the affidavit, LVNV obtained a default judgment on September 29, 2008 against Mr. O'Neil for $2,244.21, inclusive of interests and costs.

17. Mr. O'Neil was never sent and has never received from anyone a notice of the assignment of the putative Household account.

18. On May 16, 2012, Mr. O'Neil filed a *pro se* Order to Show Cause ("OSC") based on sewer service.

19. Until shortly before the filing of the order to show cause, Mr. O'Neil did not know nor could have reasonably have known about the collection lawsuit or the default judgment.

20. In the affidavit in support of the OSC, Mr. O'Neil stated he was not aware of the suit or

the judgment until he saw reference to the judgment on his credit report. He further stated that the affidavit of service claimed service on a neighbor who does not exist.

21. Finding merit to the application, the Court, Judge Rubin Franco presiding, signed the OSC ceasing all collection attempts and setting a hearing for May 30, 3012.

22. The process server and process serving company in the affidavit of service are notorious for sewer service. Indeed, on July 16, 2009 the NYC Department of Consumer Affairs ("DCA") revoked the process server license of Robert Crandall, the person who allegedly served the summons and complaint on Mr. O'Neil's a non-existent neighbor. The DCA fined Mr. Crandall and forever barred him from engaging in process serving, or even from owning or operating any type of business licensed by the DCA. The process serving company, AAA Attorney Service Co. of NY, Inc. ("AAA") has been sued repeatedly for engaging in sewer service. Indeed, AAA is alleged in an FDCPA class action to be an integral part of a massive scheme of systematically execute false affidavits of service to allow for hundreds of default collection lawsuits. *Bernhart et al v. Asta Funding, Inc.*, et al, Docket No. 1:13-cv-02935 (S.D.N.Y. 2013). On information and belief, the process server is only paid if service is claimed to be successfully executed. Defendants knew, should reasonably have known, or intentionally turned a blind eye to the sewer service.

23. On May 30, 2012 the court, Judge Fernando Tapia presiding, vacated the judgment against Mr. O'Neil, ordered all liens released, and ordered LVNV to immediately return all funds executed upon. The order also dismissed the case without prejudice. The order is attached as an exhibit to this complaint.

24. The Law Offices of Steven Cohen, LLC (the "LLC") is a debt collection law firm that files hundreds of collection lawsuits seeking to collect putative consumer debts, as well as post-

4

judgment executions.

25.     Steven Cohen ("Cohen") is "primarily responsible for running the [LLC] as well as overseeing the general commercial and consumer litigation matters handled by the [LLC]" according to the website of the LLC.

26.     LVNV retained the LLC and Cohen to collect the putative debt from Mr. O'Neil.

27.     On or about July 3, 2013, LVNV, through the LLC and under the signature of Cohen, sent a letter to Mr. O'Neil at a Bronx, New York address seeking to collect the putative debt.

28.     The July 3, 2013 letter included a statement pursuant to 15 U.S.C. § 1692g that if Mr. O'Neil disputed the debt and requested verification in writing within 30 days of receipt of the letter that debt collection activities would cease until the debt was verified. The letter did not reference a judgment.

29.     On July 30, 2013, Mr. O'Neil sent LVNV, through the LLC and Cohen, a letter disputing the debt, requesting verification of the same, and requesting the name of the original creditor.

30.     On August 28, 2013, Cohen sent a letter to O'Neil enclosing a copy of the judgment obtained in *LVNV Funding v. John O'Neill*, 065032-08/BX.

31.     Cohen's August 28, 2013 letter did not indicate that the judgment obtained in *LVNV Funding v. John O'Neill*, 065032-08/BX was vacated, nor did it indicate the name of the original creditor.

32.     A simple search on ecourts reveals that the judgment in *LVNV Funding v. John O'Neill*, 065032-08/BX was vacated.

33.     In addition, Defendants were prohibited from collecting on the assigned Household Bank account without having ever sent O'Neil a notice of assignment.

34.     On October 2, 2013, O'Neil's employer, MTA New York City Transit, was sent a Notice

of Garnishment from New York City Marshal Martin A. Bienstock, seeking to collect on the vacated default judgment in *LVNV Funding v. John O'Neill*, 065032-08/BX.

35. The Notice of Garnishment was accompanied by an income execution form, signed by Cohen of the LLC as attorney for LVNV, dated September 25, 2013, seeking to enforce the vacated judgment stemming from the discontinued action, *LVNV Funding v. John O'Neill*, 065032-08/BX.

36. Specifically, the Marshal sought $3,617.63, including $2,369.21 for the 2008 judgment, $172.26 in poundage, $7.01 in expenses, $1,069.15 in interest, and interest yet to be accrued on a daily basis.

37. By signing and sending the income execution form and garnishment notice to be served on O'Neill, Cohen and the LLC impliedly represented to O'Neil that they had performed a "meaningful review" of his case.

38. However, on information and belief, Cohen and the LLC did not perform a meaningful review of O'Neil's case.

39. If Cohen and the LLC had performed a meaningful review of O'Neil's case, they would have discovered: a) that the judgment against O'Neil was vacated; b) that the suit against O'Neil was discontinued; c) that no notice of assignment had been sent to O'Neill; and d) that they had no legal basis to continue attempting to garnish O'Neil's wages.

40. In the alternative, had Cohen and the LLC performed a meaningful attorney review, then they would be intentionally signing an execution based on a non-existent judgment, and a debt upon which no notice of assignment had ever been sent.

41. Cohen and the LLC knew and intended that the signed an information execution form and garnishment notice would be forwarded by MTA New York City Transit to O'Neill.

6

42. Beginning on or about October 2, 2013, Defendants proceeded to garnish O'Neil's wages, collecting on the vacated default judgment. Defendants' execution on Mr. O'Neil's wages constituted conversion as they had no legal right to seek or obtain a garnishment given the judgment was vacated and the case dismissed.

43. Mr. O'Neil was forced to retain an attorney to seek to have Defendants cease their illegal garnishments.

44. On or about February 27, 2014, Mr. O'Neil's counsel faxed LVNV, through its counsel the LLC and Cohen, a letter demanding the executions to stop and the return of all monies executed, and provided a copy of the order vacating the judgment and dismissing the case.

45. Defendants eventually ceased garnishing Mr. O'Neil's wages and returned much – but not all -- of the improperly garnished wages.

46. To this day, however, Defendants still have not returned all the money they improperly garnished from O'Neil. This constitutes further conversion.

47. Defendants repeatedly called Mr. O'Neil's cell phone during the summer of 2013 seeking to collect the putative debt. However, Mr. O'Neil never gave consent, express or otherwise, for the putative original creditor nor any debt collector to call his cell phone.

48. Defendants' actions inflicted damages on Mr. O'Neil. Mr. O'Neil was deprived use of his money, and to this day is still deprived of his money. He has suffered anger, frustration, anxiety, and other emotional distress. Because of the wrongful garnishment, he was unable to give his children the Christmas he had wanted to, making him angry and distressed as a father who wants to provide for his family. Mr. O'Neil was constantly worried, distracted, and distressed about when the wrongful garnishment would end, and whether they would wrongfully garnish his accounts. Mr. O'Neil also incurred expenses and lost time in having to fight a sewer service

default judgment, and wrongful collections on a vacated judgment. Reasonable attorney's fees were also accrued in getting Defendants to cease their wrongful garnishment and return at least part of his money.

### D.  COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

49.  Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

50.  The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

51.  Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

52.  The obligation allege to be owed by plaintiff is a "debt" as defined by 15 U.S.C. §

1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

53.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

54.     Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) because their principal purpose is the collection of debts and/or they regularly attempt to collect debts, directly or indirectly.

55.     LVNV is a "debt collector" because it purchases charged off consumer accounts after they are in default with the putative original creditor and attempts to collect on them by sending thousands of collection letters and filing thousands of collections lawsuits.

56.     Resurgent is a "debt collector" because it attempts to collect alleged debts owned by others – including LVNV –by reporting hundreds of thousands of alleged accounts to the credit reporting agencies each month, by sending out hundreds of thousands of collection letters, by making hundreds of thousands of telephone calls. Resurgent is the master servicer for LVNV responsible for collecting debts owned by LVNV. Resurgent collects these debts directly or through sub-servicers, including collection law firms. On information and belief, Resurgent exercises control or has the right to exercise control over the accounts it sends to sub-servicers.

57.     Alegis Group, LLC is a general partner of Resurgent. Alegis is also a debt collector because it attempts to collect debts indirectly, through Resurgent and through the sub-servicers and collection law firms retained by Resurgent. Alegis is responsible for the management of Resurgent Capital Services, LP.

58.     Defendant LLC is a law firm engaged in the business of collecting debts by filing thousands of collection lawsuits on behalf of putative creditors or debt buyers; by making

thousands of collection phone calls; and by sending out thousands of collection letters. Defendant regularly collects consumer debts alleged to be due to another, and that is its primary purpose. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

59.     The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

60.     Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, and 1692f. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

### E.  COUNT # 2: TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, et seq.

61.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

62. Defendants violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, *et seq* by calling O'Neil on his cell phone without having been given consent, express or otherwise.

63. On information and belief, the calls placed to Mr. O'Neil's cell phone were made using predictive dialers.

64. The predictive dialers placed calls without human intervention until a connection is made, in which case the dialers attempt to connect the recipient with a debt collector.

65. On information and belief, the calls placed to Mr. O'Neil's cell phone used an autodialer that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

66. The TCPA, 47 U.S.C. §227, provides:

> § 227. Restrictions on use of telephone equipment
> ... (b) Restrictions on use of automated telephone equipment.
> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; ...

67. The TCPA, 47 U.S.C. §227(b)(3), further provides:

> Private right of action.
> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.
>
> If the Court finds that the defendant willfully or knowingly violated this subsection or the

regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

68. Defendants violated the TCPA by placing automated calls to Plaintiff's cell phone.

69. Defendants made the calls to Mr. O'Neil's cell phone without prior express consent and not for an emergency purpose.

70. Defendants are strictly liable for statutory damages of $500 per call to Mr. O'Neil's cell phone, and up to three times that amount per call to the degree that its conduct was willful or knowing pursuant to 47 U.S.C. §227(b)(3).

### F. NEW YORK GENERAL BUSINESS LAW SECTION 349 ET SEQ.

71. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

72. New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

73. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h).

74. As enumerated above, Defendants violated N.Y. Gen. Bus. Law § 349 et seq. by using deceptive acts and practices in the conduct of their businesses. This includes obtaining judgments via "sewer service" and continuing to collect on those judgments after they have been vacated.

75. LVNV has repeatedly been sued for executing on vacated judgments.

76. Defendants' conduct has a broad impact on consumers at large. Defendants' conduct impacts the hundreds of consumers in the state of New York who have been victims of "sewer

service" and have had vacated judgments executed upon.

77. Defendants committed the above described acts willfully and/or knowingly.

78. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

79. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 et seq, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, as to recover actual and treble damages, costs and attorney's fees.

## G. CONVERSION

80. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

81. The elements of conversion in New York State include: 1) having a possessory interest in property; and 2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights.

82. Property subject to conversion includes readily identifiable funds from a bank account.

83. Defendants intentionally and without authority, assumed and exercised control over O'Neill's wages and money, interfering with O'Neil's right to possession of the same, by: a) directing a New York City Marshal to seize O'Neil's money; b) directing the Marshal to place O'Neil's money in trust for the benefit and use of Defendants, and then to forward said funds to Defendants; c) directing the Marshal to seize the money from O'Neil's employer despite having received notice that the judgment against O'Neil was vacated; and f) still withholding, to this day, some of the garnished funds, despite express communications from O'Neil to return the funds.

84. O'Neil gave notice of ownership of the money and demanded return, and release of the same.

85.     Defendants' improper restraint of O'Neil's money for an unreasonable period of time without qualification, which harmfully interfered with O'Neil's rights to control his own property, constitutes conversion.

86.     For the reasons stated in the statement of facts, all Defendants' conduct is gross, wanton or deliberate and demonstrates a high degree of moral culpability. Further, all Defendants conduct as alleged in the statement of facts demonstrates malice, insult, and/or willful or reckless disregard of O'Neil's rights, or other aggravated acts by all Defendants.

87.     For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages. Actual damages include loss of use of money for the period all Defendants wrongfully exercised dominion and control over Plaintiff's wages and money. Plaintiff suffered serious mental distress and disruption of his daily life.

### H.     JURY DEMAND.

88.     Plaintiff demands a trial by jury.

### I.     PRAYER

89.     WHEREFORE, Plaintiff requests the following relief:

a.  A declaration that all Defendants have committed the violations of law alleged in this action;

b.  An order enjoining and directing all Defendants to cease violating G.B.L. § 349 *et seq.*;

c.  Statutory damages under 15 U.S.C. § 1692k

d.  Pursuant to 47 U.S.C. §227(b)(3), statutory damages against all Defendants of $500 per call, and up to 3 times that amount per call to the degree that its violations of the TCPA were willful or knowing;

e.  An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k and

47 U.S.C. §227;

f.   A judgment for actual, statutory, and treble damages;

g.   Prejudgment and post judgment interest as allowed by law;

h.   All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated: Brooklyn, New York
       September 19, 2014

Respectfully submitted,

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:   (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com